Dos UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: DAVID ALAN LEWIS and<br>DONNA LYNN LEWIS,<br>Debtors | : <br> : <br> : | Chapter 7<br>Case No. 16-12372REF |
| DAVID ALAN EISENBERG,<br>as Chapter 7 Trustee,<br>Plaintiff<br>v.<br>PENNSYLVANIA STATE<br>UNIVERSITY,<br>Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : | Adv. No. 16-0282<br>Adv. No. 16-0284 |

# OPINION

# I. INTRODUCTION

These adversary complaints constitute an attempt by the Chapter 7 Trustee in the underlying main bankruptcy case (the "Trustee"), to recover funds from Pennsylvania State University ("Penn State") pursuant to a relatively new legal theory. The United States Department of Education (the "Department") paid the proceeds of Parent Plus loans directly to Penn State. The Trustee incorrectly claims such payments were fraudulent transfers under both the Bankruptcy Code[1] and the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA").[2] The Parent

---

[1] Section 548, 11 U.S.C. §548(a)(1)(A) and (B).
[2] Sections 5104 and 5105, 12 Pa. C.S. §§5104 and 5105.

1

Plus loans, made in the name of Debtor, David Alan Lewis ("Mr. Lewis"), paid the tuition and other qualified educational expenses of two of his children. The Trustee filed two separate complaints, each of which seeks the recovery of the loan proceeds from Penn State for each child. The legal issues raised by the complaints are identical. Penn State filed motions to dismiss each complaint pursuant to Bankruptcy Rule 7012,[3] arguing that the Trustee has failed to state claims upon which relief can be granted.

I agree with Penn State that (1) neither Mr. Lewis nor his estate hold or ever held an interest in the proceeds of the Parent Plus loans and (2) Mr. Lewis received reasonably equivalent value in exchange for the transfers. I will therefore grant Penn State's motions and dismiss both complaints.

## II. <u>DISCUSSION</u>

Prior to filing his Chapter 7 bankruptcy petition, Mr. Lewis applied, and was approved, for several Parent Plus loans to pay tuition and other qualified educational expenses of two of his children so they could attend Penn State. The proceeds from the Parent Plus loans were paid directly from the Department to Penn State without passing through either Mr. Lewis or his children. The total balance owed by Mr. Lewis on the Parent Plus loans, as of June 13, 2016, was

---

[3]    Fed. R. Bankr. P. 7012.

2

$142,990.46.[4] The Trustee filed the complaints to recover the Parent Plus loan proceeds that were paid by the Department to Penn State as fraudulent transfers under both the Bankruptcy Code and PUFTA. Again, I agree with Penn State's arguments in its motions and will dismiss both of the complaints.

## A. The Complaints Fail To State Claims for Avoidance of Fraudulent Transfers Under Either the Bankruptcy Code or PUFTA Because Mr. Lewis Never Had an Interest in the Proceeds of the Parent Plus Loans.

To avoid a transfer as a fraudulent transfer under either the Bankruptcy Code or PUFTA, the Trustee must establish that Mr. Lewis held an interest in the proceeds of the Parent Plus loans.[5] "It is axiomatic that the scope of a debtor's interest in property is defined by relevant nonbankruptcy law and not expanded by the bankruptcy filing." In re Colonial Center, Inc., 156 B.R. 452, 463

---

[4]    The complaint in Adv. No. 16-282 alleges that as of June 13, 2016, the balance owed by Mr. Lewis on the Parent Plus loans to pay the tuition and other qualified educational expenses of his daughter to attend Penn State was $102,045.21. See complaint filed in Adv. No. 16-282, ¶15. The complaint does not allege the original amount of the loan disbursements paid by the Department to Penn State to pay the tuition and other qualified educational expenses of Mr. Lewis' daughter. The complaint in Adv. No. 16-284 alleges that as of June 13, 2016, the balance accrued on the Parent Plus loans to pay the tuition and other qualified educational expenses of his son was $40,945.25. See complaint in Adv. No. 16-284, ¶16. Mr. Lewis' son attended two different colleges, Penn State and Dakota State University, which was also named as a defendant in Adv. No. 16-284. The Trustee settled the matter with Dakota State University and agreed to dismiss the complaint against Dakota State University in exchange for its payment of $3,000. Therefore, Dakota State University is no longer a party in this litigation. The amount of the Parent Plus loans paid by the Department to Penn State for the tuition and other qualified education expenses of Mr. Lewis' son was $20,000. See complaint in Adv. No. 16-284 at ¶14.

[5]    A chapter 7 trustee may only avoid a transfer as fraudulent under the Bankruptcy Code if, among other things, it was a transfer "… of an interest of the debtor in property …." 11 U.S.C. §548(a)(1). Likewise, a chapter 7 trustee may only avoid "a transfer made or obligation incurred by a debtor" under PUFTA, 12 Pa. C.S. §§5104, 5015, if the asset transferred was property of the debtor. See definitions of "transfer" and "asset" contained in PUFTA. 12 Pa. C.S. §5101(b).

3

(Bankr. E.D. Pa. 1993) (citing Butner v. United States, 440 U.S. 48 (1979)); see also In re Nejberger, 934 F.2d 1300, 1302 (3d Cir. 1991). "An interest of the debtor in property encompasses 'that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.'" Michaelson v. Farmer (In re Appleseed's Intermediate Holdings, LLC), 470 B.R. 289, 298 (D. Del. 2012) (quoting Begier v. I.R.S., 496 U.S. 53, 58 (1990); see also Golden v. The Guardian (In re Lenox Healthcare, Inc.), 343 B.R. 96, 100 (Bankr. D. Del. 2006).

The purpose of the fraudulent transfer provisions in the Bankruptcy Code and PUFTA is to protect creditors by preventing a debtor from placing assets otherwise available to pay creditors out of the reach of those creditors. As Chief Judge Frank recently explained when considering fraudulent transfer claims under both the Bankruptcy Code and PUFTA:

> Although there is no formal "diminution of estate" requirement in the statutory language, the purpose of fraudulent transfer recovery is to prevent a debtor from putting assets otherwise available to its creditors out of their reach: In our quest to understand fraudulent transfer liability, we often overlook first principles. At its core, fraudulent transfer law is a debt-collection device and not a revenue generating tool; its mission is to prevent the unjust diminution of the debtor's estate.

Finkel v. Polichuk (In re Polichuk), 506 B.R. 405, 435 (Bankr. E.D. Pa. 2014) (quoting In re Consolidated Pioneer Mtge. Entities, 211 B.R. 704, 717 (S.D. Cal.

4

1997)); see also Daly v. Kennedy (In re Kennedy), 279 B.R. 455, 460 (Bankr. D. Conn. 2002) ("the subject transfer must also diminish the assets of the debtor available for distribution to creditors.").

As I explain below, the proceeds from the Parent Plus loans were never Mr. Lewis' property, were never in his possession or control, and were never remotely available to pay Mr. Lewis' creditors. As a result, the Department's payment of the Parent Plus loan proceeds to Penn State did not diminish Mr. Lewis' bankruptcy estate and avoidance of these transfers would be improper and unwarranted.

The existence of the Parent Plus loan system is dependent upon and limited by the Higher Education Act of 1965 ("Higher Education Act"),[6] and related federal regulations.[7] Parent Plus loans may only be issued "to pay for the student's cost of attendance …" at "[c]olleges, universities, graduate and professional schools, vocational schools, and proprietary schools …."[8] Likewise, a parent is only eligible to receive a Parent Plus loan if "[t]he parent is borrowing to pay for the educational costs of a dependent undergraduate student …."[9]

---

[6] 20 U.S.C. §1001 et seq.
[7] 34 C.F.R. §685.100 et seq.
[8] 34 C.F.R. §685.101(a).
[9] 34 C.F.R. §685.200(c)(2)(i).

5

The availability of a Parent Plus loan is determined after the parent, the student, and the school each submit applications and other information to the Department.[10] The amount of any Parent Plus loan issued by the Department is determined by the Higher Education Act based on financial information of the borrowers and the rate of tuition and other costs of attendance at the college.[11] As evidenced by the Higher Education Act and the regulations promulgated thereunder, the funds represented by the Parent Plus loans at issue would never have come into existence had Mr. Lewis' children not attended Penn State. The proceeds of the Parent Plus loans at issue did not and could not have passed through Mr. Lewis' hands and did not and could not have been used to pay any of Mr. Lewis' debt and could not be used for any other purpose than to pay the cost of the children's tuition and other qualified educational expenses at Penn State.

In addition, the Higher Education Act and related regulations unconditionally prevent borrowers like Mr. Lewis from actually receiving the proceeds of the Parent Plus loan. Qualifying schools "draw down [the Parent Plus loan proceeds] or receive [the Parent Plus loan proceeds] from the Secretary … after the school requests the funds in accordance with 34 C.F.R. §668.162."[12] The Trustee concedes that the proceeds from the Parent Plus loans were paid directly to

---

[10] See 34 C.F.R. §685.201.
[11] See 34 C.F.R. §682.204(g), (j).
[12] See 34 C.F.R. §685.201(a)(2)(iii).

6

Penn State, bypassing Mr. Lewis entirely.[13] The Parent Plus loan proceeds were never in Mr. Lewis' possession or control, could not ever be in Mr. Lewis' possession or control, and therefore could not possibly be considered to be property of the estate. Moreover, had Mr. Lewis' children withdrawn from Penn State or lost their financial aid eligibility, Penn State would have been required to deliver any remaining Parent Plus loan proceeds to the Department, not to Mr. Lewis or his children.[14]

      For all of these reasons, I find that applicable nonbankruptcy law (i.e. the Higher Education Act and the regulations promulgated thereunder), expressly prevented the Parent Plus loan proceeds from becoming property of Mr. Lewis or his estate. In addition, the Parent Plus proceeds were not and could not have been property in which Mr. Lewis had an interest or over which he had control. None of the Parent Plus proceeds could have been available in any circumstance to pay Mr. Lewis' creditors. Because Mr. Lewis never had possession of, control over, or an interest in, the Parent Plus loan proceeds, those proceeds could not have been available to pay Mr. Lewis' creditors.

      Permitting the Trustee to proceed with this litigation would enable fraudulent transfer avoidance statutes to be used improperly as revenue generating

---

[13]    See complaint in Adv. No. 16-282, ¶13; complaint in Adv. No. 16-284, ¶14.
[14]    See 34 C.F.R. ¶682.607.

tools. Such usage would do nothing to further the fundamental premise underlying both the Bankruptcy Code and PUFTA fraudulent transfer provisions, which is "to prevent a debtor from putting assets otherwise available to its creditors out of their reach ... and to prevent the unjust diminution of the debtor's estate," Polichuk, 506 B.R. at 435.[15] I will therefore grant Penn State's motions to dismiss the complaints.

## B. The Complaints Fail To State Claims for Avoidance of a Fraudulent Transfer upon Which Relief Can Be Granted Under the Bankruptcy Code or PUFTA Because the Facts Alleged in the Complaints Show that Mr. Lewis Received Reasonably Equivalent Value in Exchange for the Transfers.

Penn State argues alternatively that if I were to find that Mr. Lewis had an interest in the Parent Plus loan proceeds, which I expressly do not, the complaints nonetheless fail to state fraudulent transfer claims under both the

---

[15] The Trustee argues that both the Bankruptcy Code and PUFTA permit him to avoid "the incurring of an obligation" by Mr. Lewis. 11 U.S.C. §548(a)(1); 12 Pa. C.S. §§5104, 5105. While this statement is generally true, the Trustee is grasping at straws. First, the Bankruptcy Code and PUFTA do not provide authority for the Trustee to obtain the relief he seeks, which is for the Parent Plus loan proceeds to be paid to him by Penn State. To the contrary, when a trustee is successful in an attempt to avoid the incurring of an obligation as a fraudulent transfer, the obligation is simply rendered unenforceable, leaving no property or asset to return. See In re Asia Global Crossing, Ltd., 333 B.R. 199, 202 (Bankr. S.D. N.Y. 2005) ("If the trustee avoids a 'transfer,' he can recover the property transferred or the value of the property under §550. If, on the other hand, he avoids an obligation, the obligation is rendered unenforceable, there is nothing to return, and §550 affords no remedy."); Brown v. GE Capital (In re Foxmeyer Corp.), 290 B.R. 229, 234 (Bankr. D. Del. 2003). If the Trustee were to succeed in his attempt to avoid Mr. Lewis' obligation on the Parent Plus loans, Mr. Lewis' obligation to repay the Parent Plus loans would be rendered unenforceable, but the transfer of the Parent Plus loan proceeds to Penn State would not be avoided.

8

Bankruptcy Code[16] and PUFTA.[17] The facts alleged in the complaints clearly show that Mr. Lewis received reasonably equivalent value in exchange for the transfers. I agree with Penn State and the reasoning of the courts in <u>Trizechahn Gateway, LLC v. Oberdick</u> (<u>In re Oberdick</u>), 490 B.R. 687, 711-12 (Bankr. W.D. Pa. 2013); <u>Sikirica v. Cohen</u> (<u>In re Cohen</u>), Bankr. No. 05-38135-JAD, Adv. No. 07-02157-JAD, 2012 WL 5360956, at *9-10 (Bankr. W.D. Pa. October 31, 2012). A parent's payment of a child's undergraduate college expenses is reasonable and necessary expense for maintenance of the family and for preparing family members for the future. The parent therefore receives reasonably equivalent value in exchange for the tuition payment.

## C. Critical Issues that the Parties Left Unaddressed

In the course of my review of the parties' briefs and my considering all aspects of this litigation, I wondered what would flow from a successful effort by the Trustee to recover funds from Penn State. This is something that neither party addressed in their arguments to me. I regard these issues as important, but did not want to unilaterally analyze them in this Opinion. I did not have to do so, however, because I have decided that the Trustee may not recover the Parent Plus loan proceeds from Penn State. This results in the troubling issues being moot. I

---

[16]    11 U.S.C. §548(a)(1).
[17]    12 Pa. C.S. §§5104 & 5105.

9

will therefore not address them, although I point them out to the parties for the sake of their full consideration.

Following are critical issues that I believe the parties have left unaddressed:

1. If the Trustee is successful, does someone owe Penn State the avoided tuition?

2. Under any result in this litigation, does Mr. Lewis owe the bank non-dischargeable debt/

3. What happens if PSU files a claim against Mr. Lewis?

4. Does Mr. Lewis face BOTH (1) non-dischargeable liability to the bank for the loans AND (2) the avoided tuition payments owed to PSU?

5. Can PSU somehow bootstrap the status of the bank and have the debt be non-dischargeable?

6. If Debtor's debt to PSU is dischargeable or uncollectible, can PSU undertake collection efforts against Mr. Lewis' son and daughter?

7. Does that make Mr. Lewis and his son and daughter necessary parties who must have been joined in the complaint as party defendants?

8. Can PSU refuse to give Mr. Lewis' son and daughter transcripts, etc, until paid in full by someone for all money avoided by the Trustee?

# III. CONCLUSION

As a result, I find and conclude that the complaints fail to allege that Mr. Lewis did not receive reasonably equivalent value in exchange for the transfers. The complaints in both adversary proceedings must therefore be dismissed.

An appropriate Order follows.

DATE: April 7, 2017                              BY THE COURT

_____
RICHARD E. FEHLING
United States Bankruptcy Judge